MOEEL LAH FAKHOURY LLP
Shaffy Moeel (State Bar No. 238732)
2006 Kala Bagai Way, Suite 16
Berkeley, CA 94704
Telephone:   (510) 500-9994
Email:       shaffy@mlf-llp.com

Attorneys for Asa Houston

IN THE UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | **Case No.:** 2:24-CR-00621-MWF-5 |
| Plaintiff, | **DEFENDANT ASA HOUSTON'S REPLY TO GOVERNMENT'S OPPOSITION TO MOTION TO DISMISS COUNT FOUR** |
| v. | |
| ASA HOUSTON, | **Court:**        Courtroom 5A |
| Defendant. | **Hearing Date:** November 18, 2025 |
| | **Hearing Time:** 10:00 a.m. |

## <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES.................................................................................................ii

INTRODUCTION ........................................................................................................... 1

ARGUMENT ................................................................................................................... 1

    A.    Even as narrowed by the government, the mens rea in § 2261A(2)(A) is overbroad
          and indivisible. ................................................................................................... 2

    B.    "Death of the victim results" is not an element for categorical analysis but even if it
          is, § 2261A(2)(A) still does not require the intentional use of physical, violent force..... 6

CONCLUSION ................................................................................................................ 10

DEFENDANT ASA HOUSTON'S REPLY TO GOVERNMENT'S OPPOSITION TO MOTION TO DISMISS COUNT FOUR
*United States v. Houston*, 2:24-CR-00621-MWF-5

i

1

## **TABLE OF AUTHORITIES**

2

### **Cases**

3

*Apprendi v. New Jersey*, 530 U.S. 466 (2000) ..................................................................... 7

4

*Borden v. United States*, 593 U.S. 420 (2021) ............................................................... 2, 9

5

*Burrage v. United States*, 571 U.S. 204 (2014) .................................................................. 9

6

*Davis v. United States*, 588 U.S. 445 (2019) ...................................................................... 2

7

*Dean v. United States*, 556 U.S. 568 (2009) ....................................................................... 9

8

*Elonis v. United States*, 575 U.S. 723 (2015) .................................................................... 9

9

*Fernandez v. United States*, 569 F. Supp. 3d 169 (S.D.N.Y. 2021) ................................... 8

10

*Johnson v. United States*, 559 U.S. 133, 136 (2010) .................................................. 2, 5, 8

11

*Mathis v. United States,* 579 U.S. 500, 517 (2016) ...................................................... 3, 4, 7

12

*Qadar v. United States*, 2020 WL 3451658 (E.D.N.Y. June 24, 2020) ............................... 8

13

*United States v. Begay*, 33 F.4th 1081 (9th Cir. 2022) (en banc) ...................................... 2

14

*United States v. Eckford*, 77 F.4th 1228 (9th Cir. 2023) ................................................... 2

15

*United States v. Fitzgerald*, 935 F.3d 814 (9th Cir. 2019) (per curiam) ........................... 2

16

*United States v. Griffin*, 2022 WL 2071054 (E.D. Mich. 2022) ........................................ 5

17

*United States v. McDuffy*, 890 F.3d 796 (9th Cir. 2018) ........................................... 7, 8, 9

18

*United States v. Vera*, 770 F.3d 1232 (9th Cir. 2014) ....................................................... 7

19

*United States v. Watson*, 881 F.3d 782 (9th Cir. 2018) (per curiam) ................................ 5

20

*Villagomez v. McHenry*, 127 F.4th 113 (9th Cir. 2025) ........................................... 2, 5, 8, 9

21

### **Statutes**

22

18 U.S.C. § 924 ............................................................................................................ *passim*

23

18 U.S.C. § 1958 .......................................................................................................... *passim*

24

18 U.S.C. § 2113 ............................................................................................................... 8, 9

25

18 U.S.C. § 2261 ......................................................................................................... 1, 3, 7, 9

26

18 U.S.C. § 2261A ........................................................................................................ *passim*

27

18 U.S.C. § 2266 ................................................................................................................. 7

28

DEFENDANT ASA HOUSTON'S REPLY TO GOVERNMENT'S OPPOSITION TO MOTION TO DISMISS COUNT FOUR
*United States v. Houston*, 2:24-CR-00621-MWF-5

ii

## **Other Authorities**

Fifth Circuit Pattern Jury Instructions (Criminal Cases) 2.86B, Stalking, 18 U.S.C. §§ 2261A(2),
2261(b), 2261B ................................................................................................................. 4

DEFENDANT ASA HOUSTON'S REPLY TO GOVERNMENT'S OPPOSITION TO MOTION TO DISMISS COUNT FOUR
*United States v. Houston*, 2:24-CR-00621-MWF-5

iii

## INTRODUCTION

Defendant Asa Houston moved this Court to dismiss Count Four of the Second Superseding Indictment, charging him with use, carry and discharge of a firearm and machinegun, in furtherance of a crime of violence, resulting in death, in violation of 18 U.S.C. §§ 924(c)(1)(A)(iii) and (j)(2). *See* Dkt. 226, Motion to Dismiss ("Motion"). He argued that neither of the predicate crimes alleged by the government to be "crimes of violence"—18 U.S.C. §§ 1958(a) and 2261A(2)—required the intentional use of violent, physical force. Without a requisite "crime of violence," Count Four had to be dismissed. Motion at 3-14.

The government opposes the motion but makes two important concessions that will play a significant role in this case going forward. *See* Dkt. 272, Government's Opposition to Defendant Asa Houston's Motion to Dismiss Count 4 of the Second Superseding Indictment ("Gov. Oppo.").

First, it has abandoned § 1958(a) as a predicate to support the § 924(c) charged in Count Four. Gov. Oppo. at 1.

Second, it has elected "to proceed only under §§ 2261A(2)(A), 2261(b)(1)—*i.e.*, that the defendants engaged in course of conduct that placed the victims in reasonable fear of death or serious bodily injury, resulting in S.R.'s death—not under § 2261A(2)(B)." *Id.* Regardless of the outcome of this motion, that concession means that the jury must be instructed as to that theory of the crime alone, not to any other theory set forth in Count 3 of the second superseding indictment.

Given these concessions, and for the reasons set forth in the opening motion and below, this Court should find there is no predicate "crime of violence" and dismiss Count 4.

## ARGUMENT

Under 18 U.S.C. § 924(c), anyone "who, during and in relation to any crime of violence…uses or carries a firearm, or who, in furtherance of any such crime, possesses a firearm" is subject to an additional mandatory minimum consecutive prison sentence. 18 U.S.C. § 924(c)(1)(A). The term "crime of violence" means a felony that "has as an element the use, attempted use, or threatened use of physical force against the person or property of another." 18 U.S.C. § 924(c)(3)(A). This definition is known as the "elements clause." *United States v. Begay*, 33 F.4th 1081, 1090 (9th Cir. 2022) (en

DEFENDANT ASA HOUSTON'S REPLY TO GOVERNMENT'S OPPOSITION TO MOTION TO DISMISS COUNT FOUR
*United States v. Houston*, 2:24-CR-00621-MWF-5

1

banc).[1]

"Physical force" means "*violent* force—that is, force capable of causing physical pain or injury to another person," which must be "more than 'a mere unwanted touching.'" *United States v. Fitzgerald*, 935 F.3d 814, 817-18 (9th Cir. 2019) (per curiam) (quoting *Johnson v. United States*, 559 U.S. 133, 136, 142 (2010)) (emphasis in original). The use of physical force must be "intentional," not merely reckless or accidental. *Villagomez v. McHenry*, 127 F.4th 113, 118 (9th Cir. 2025) ("crimes of violence must include (1) the intentional deployment of (2) *Johnson*-level force."). The elements clause excludes "offenses criminalizing reckless conduct" and "demands that the perpetrator direct his action at, or target, another individual." *Borden v. United States*, 593 U.S. 420, 429 (2021).

To determine whether a predicate meets the definition of a "crime of violence" to support a § 924(c) charge, courts employ the "categorical approach." *Begay*, 33 F.4th at 1090. Under this analysis, "the facts of a given case are irrelevant" and the "focus is whether the elements of the statute of conviction meet the federal standard." *Id.* (quotations omitted). The "only relevant question is whether the federal felony at issue *always* requires the government to prove—beyond a reasonable doubt, as an element of its case—the use, attempted use, or threatened use of force." *United States v. Eckford*, 77 F.4th 1228, 1232 (9th Cir. 2023) (emphasis in original) (quotations omitted). "Unless the least culpable act criminalized in the…statute entails that force, the statute is not a categorical match with the elements clause, and it does not qualify as a crime of violence." *Begay*, 33 F.4th at 1091.

**A.** **Even as narrowed by the government, the mens rea in § 2261A(2)(A) is overbroad and indivisible.**

Count Three alleged a violation of § 2261A(2) but did not specify which specific subsection of that statute the government was pursuing, and included all means of intent and all means of the requisite course of conduct. Dkt. 147 at 14.

Section § 2261A(2) criminalizes anyone who "with the intent to kill, injure, harass, intimidate,

---

[1] There is a second statutory definition of a "crime of violence," specifically a crime "that by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense." 18 U.S.C. § 924(c)(3)(B). But the Supreme Court has found that subsection of § 924(c), known as the "residual clause," unconstitutionally vague. *Davis v. United States*, 588 U.S. 445, 470 (2019).

DEFENDANT ASA HOUSTON'S REPLY TO GOVERNMENT'S OPPOSITION TO MOTION TO DISMISS COUNT FOUR
*United States v. Houston*, 2:24-CR-00621-MWF-5

2

or place under surveillance with intent to kill, injure, harass, or intimidate another person, uses the

mail, any interactive computer service or electronic communication service or electronic

communication system of interstate commerce, or any other facility of interstate or foreign commerce

to engage in a course of conduct" that "(A) places that person in reasonable fear of the death of or

serious bodily injury to a person, a pet, a service animal, an emotional support animal, or a horse…or

(B) "causes, attempts to cause, or would be reasonably expected to cause substantial emotional

distress to a person." 18 U.S.C. § 2261A(2).

Mr. Houston's motion explained that the crime charged in Count 3 was not a "crime of

violence" because it did not require the intentional use of violent, physical force. Motion at 9-12. The

statute criminalized conduct done with the intent to "harass, or intimidate" that would merely "be

reasonably expected to cause substantial emotional distress to a person." 18 U.S.C. §§ 2261A(2), (B).

His motion also explained that the statute was not divisible, as it listed several different means of

satisfying the mens rea for conviction, as well as several different ways for the government to prove

the impact of the defendant's conduct. Motion at 12-14. It specifically noted that Count Three alleged

all the different kinds of intent and course of conduct covered by the statute, including specifically

conduct that "would be reasonably expected to cause substantial emotional distress to the victims."

Dkt. 147 at 14; Motion at 13-14.

The government counters by arguing that § 2261A is "divisible into at least four parts." Gov.

Oppo. at 4. It first claims the statute is divisible between §§ 2261A(1) and (2); it then argues that §

2261A(2) is further divisible between subsections (A) and (B). Gov. Oppo. at 4. Having identified

four different possible offenses, the government's opposition states it "now elects to proceed only

under §§ 2261A(2)(A), 2261(b)(1)—*i.e.*, that the defendants engaged in course of conduct that placed

the victims in reasonable fear of death or serious bodily injury, resulting in S.R.'s death." Gov. Oppo.

at 1.

For the reasons set forth in Mr. Houston's original motion, § 2261A is not divisible. Motion at

12-14. A court undertaking categorical analysis "faced with an alternatively phrased statute" must

"determine whether its listed items are elements or means." *Mathis v. United States,* 579 U.S. 500,

517 (2016). Only the elements matter for "crime of violence" analysis because categorical analysis is

DEFENDANT ASA HOUSTON'S REPLY TO GOVERNMENT'S OPPOSITION TO MOTION TO DISMISS COUNT FOUR
*United States v. Houston*, 2:24-CR-00621-MWF-5

3

1    "indifferen[t] to how a defendant actually committed a prior offense" and a "court may ask only

2    whether the elements" are a categorical match. *Id.* Here, § 2261A(2) lists several different means of

3    satisfying the mens rea for conviction: "intent to kill, injure, harass, intimidate." Similarly, the statute

4    contains several different ways for the government to prove the impact of the defendant's conduct

5    caused the victim to be placed "in reasonable fear of the death of or serious bodily injury to a person"

6    or suffer "substantial emotional distress." 18 U.S.C. §§ 2261A(2)(A), (B). Critically, the maximum

7    penalty for § 2261A does not change based on the defendant's intent or the impact on the victim,

8    further reinforcing the fact these are alternative means, not elements, of the crime. *See Mathis*, 579

9    U.S. at 518 ("If statutory alternatives carry different punishments, then…they must be elements.").

10   While the Ninth Circuit does not have a model jury instruction for § 2261A, the Fifth Circuit's model

11   instruction lists multiple means of satisfying the second element of intent—including the overbroad

12   intent to "harass or intimidate"—and multiple means of satisfying the third element, including the

13   overbroad effect of causing a victim to feel "substantial emotional distress." Fifth Circuit Pattern Jury

14   Instructions (Criminal Cases) 2.86B, Stalking, 18 U.S.C. §§ 2261A(2), 2261(b), 2261B, p. 429.[2]

15   Critically, the jury instruction does not require juror unanimity as to which of these means satisfy the

16   corresponding element. *See* Motion at 12-13.

17        But even if the government is right and the statute is divisible, given the government's

18   concession that it is only proceeding under § 2261A(2)(A), the relevant inquiry for this Court is now

19   whether § 2261A(2)(A) is overbroad. After all, when a statute is divisible, the modified categorical

20   approach allows a court to look at "a limited class of documents…to determine what crime, with

21   what elements, a defendant was convicted of" in order to "compare *that* crime, as the categorical

22   approach commands, with the relevant generic offense." *Mathis*, 579 U.S. at 506 (emphasis added).

23        Looking at the narrowed crime alleged by the government here, it is clear that § 2261A(2)(A) is

24   overbroad. Again, that statute criminalizes anyone who

25        with the intent to kill, injure, harass, intimidate, or place under surveillance with intent
         to kill, injure, harass, or intimidate another person, uses the mail, any interactive
26        computer service or electronic communication service or electronic communication

27   ─────────────────

28   [2] *Available at* https://www.lb5.uscourts.gov/viewer/?/juryinstructions/Fifth/PJI-CRIMINAL_2024_EDITION_FINAL.pdf.

DEFENDANT ASA HOUSTON'S REPLY TO GOVERNMENT'S OPPOSITION TO MOTION TO DISMISS COUNT FOUR
*United States v. Houston*, 2:24-CR-00621-MWF-5

4

system of interstate commerce, or any other facility of interstate or foreign commerce to engage in a course of conduct that…places that person in reasonable fear of the death of or serious bodily injury to a person, a pet, a service animal, an emotional support animal, or a horse.

18 U.S.C. § 2261A(2)(A). "An offense is categorically a crime of violence only if the least violent form of the offense qualifies as a crime of violence." *United States v. Watson*, 881 F.3d 782, 784 (9th Cir. 2018) (per curiam). On its face, § 2261A(2)(A) is overbroad because its least violent form criminalizes conduct done with the intent to "harass, or intimidate." 18 U.S.C. §§ 2261A(2). This language falls short of requiring "the use, attempted use, or threatened use of physical force against the person or property of another." 18 U.S.C. § 924(c)(3)(A). A defendant could "harass" or "intimidate" a victim through all sorts of conduct that would not "include (1) the intentional deployment of (2) *Johnson*-level force." *Villagomez*, 127 F.4th at 118.

Nor is the intent element in § 2261A(2)(A) divisible, as even the government agrees. Its opposition notes "that the multiple means of proving intent are not distinct elements" under § 2261A(2)(A). Gov. Oppo. at 5. For the reasons stated earlier, that concession is well taken. Given that the intent required for § 2261A(2)(A) is broader than the intent needed to qualify as a "crime of violence," this Court's inquiry is over and the § 2261A(2)(A) crime charged here cannot support Count 4.

The government attempts to get around the straightforward conclusion that the overbroad, indivisible mens rea of § 2261A(2)(A) ends the Court's inquiry by arguing that nothing about the crime's mens rea "change[s] the plain distinction between the different types of *conduct* the government must prove" under § 2261A(2)(A). Gov. Oppo. at 6 (emphasis in original). It continues that the statute requires "'some kind of volitional conduct' placing the victim in reasonable fear of death or injury. Fear alone is insufficient." Gov. Oppo. at 8 (quoting *United States v. Griffin*, No. 2:17-CR-20639-TGB-MKM, 2022 WL 2071054, at *5 (E.D. Mich. 2022)).

But the only "volitional *conduct*" required by § 2261A(2)(A) is to use the mail, a computer, the Internet or interstate commerce with nothing more than the intent to injure or harass someone else. Moreover, the crux of the government's argument is that, by doing something with the intent to harass someone, the conduct necessarily comes with at least an *implied* threatened use of force if the

DEFENDANT ASA HOUSTON'S REPLY TO GOVERNMENT'S OPPOSITION TO MOTION TO DISMISS COUNT FOUR
*United States v. Houston*, 2:24-CR-00621-MWF-5

5

1    conduct placed the person in fear for their life. But a simple example proves that is not the case.

2        Take someone who harasses an ex-girlfriend in text messages by threating to release nude

3    photographs of her—the classic revenge-porn situation. The harasser is not doing this to threaten

4    physical harm, implied or otherwise, but instead to humiliate the ex-girlfriend. Still, if that ex-

5    girlfriend has (for example) an abusive boyfriend or father, she might be placed in fear for her safety

6    not from the defendant but from those third parties. The defendant in this situation would have

7    violated § 2261A(2)(A): he would have engaged in a course of conduct through an electronic

8    communication service with the intent to harass the victim and the victim would be placed in fear of

9    serious bodily injury. That defendant, however, did not use, threaten to use, or attempt to use any

10    physical force against the victim. Indeed, in this situation, the defendant would not even need to

11    know about the third party. These sorts of examples in which a third party (unbeknownst to the

12    defendant) places the victim in fear for their safety will both necessarily be a violation of the statute

13    and not constitute a "crime of violence."

14        More generally, nothing about placing someone in fear for their safety necessarily means the

15    defendant used, threatened to use, or attempted to use physical force. Someone might continually

16    harass someone and that person fears for their safety, even though the defendant did not threaten—

17    either explicitly or implicitly—using force. Indeed, that is the very purpose of stalking statutes. Even

18    if the defendant is not actually threatening the victim, legislatures want to punish people more harshly

19    if the victim does in fact feel fear. In essence, the defendant runs the risk of the victim feeling fear

20    from their harassing conduct, even if the defendant did not intend that. For this reason, too, there is a

21    categorical mismatch between the elements of the § 2261A(2)(A) and a "crime of violence."

22    **B.**   **<u>"Death of the victim results" is not an element for categorical analysis but even if it is, §</u>**
23         **<u>2261A(2)(A) still does not require the intentional use of physical, violent force.</u>**

24        As a fallback, the government argues that "even if the basic version of 18 U.S.C § 2261A(2)(A)

25    does not constitute a crime of violence, it is a crime of violence when the conduct results in death."

26    Gov. Oppo. at 9.

27        It reaches that result by first asserting that § 2261A is "divisible into basic and aggravated

28    offenses." Gov. Oppo. at 10. As noted in Mr. Houston's motion with the similarly worded § 1958(a),

DEFENDANT ASA HOUSTON'S REPLY TO GOVERNMENT'S OPPOSITION TO MOTION TO DISMISS COUNT FOUR
*United States v. Houston*, 2:24-CR-00621-MWF-5

6

1    because the maximum punishment for violating § 2261A increases if "death of the victim results,"

2    these facts must be submitted to the jury to satisfy the Sixth Amendment under *Apprendi v. New*

3    *Jersey*, 530 U.S. 466 (2000). *See* 18 U.S.C. § 2261(b)(1); Motion at 5.

4    But such facts "are not elements nor do they criminalize otherwise innocent conduct." *United*

5    *States v. McDuffy*, 890 F.3d 796, 801 (9th Cir. 2018). Rather than serve as "an element of the

6    'generic crime,'" such facts are "'the functional equivalent of an element that [needs] to submitted to

7    a jury and proved beyond a reasonable doubt for the purposes of sentencing alone.'" *Id.* (quoting

8    *United States v. Vera*, 770 F.3d 1232, 1249 (9th Cir. 2014)). Since these "predicate facts do not

9    criminalize otherwise innocent conduct…the underlying conviction does not depend on the presence

10   or absence of the predicate fact." *McDuffy*, 890 F.3d at 801. Yet categorical analysis is concerned

11   with "whether the elements of the crime of *conviction* sufficiently match the elements" of the generic

12   crime "while ignoring the particular facts of the case." *Mathis*, 579 U.S. at 504 (emphasis added).

13   Thus, a fact that might increase punishment but is not required for "conviction" is irrelevant for

14   purposes of categorical analysis. That is precisely what the "death of the victim results" language is

15   in § 2261A: a fact that must be proven to the jury beyond a reasonable doubt to increase the

16   maximum punishment, but a fact that is nonetheless *not* required for conviction and so irrelevant for

17   purposes of a "crime of violence" analysis.

18   Even if this Court disagrees with that conclusion and believes the "death of the victim results"

19   is an element for categorical analysis, the aggravated version of the § 2261A(2)(A) offense would

20   still not satisfy the "crime of violence" definition because it does not require the intentional use of

21   physical, violent force.

22   Again, like § 1958(a), the *conduct* criminalized under § 2261A(2)(A) is not itself violent. *See*

23   Motion at 7. Indeed, the statute criminalizes a person who "uses the mail, any interactive computer

24   service or electronic communication service or electronic communication system of interstate

25   commerce, or any other facility of interstate or foreign commerce to engage in a course of conduct"

26   that results in death of any person. 18 U.S.C. § 2261A(2)(A). "Course of conduct" just means "2 or

27   more acts." 18 U.S.C. § 2266(2). The act of using the mail or a computer is not itself violent, even if

28   a death ultimately results. *See Qadar v. United States*, 2020 WL 3451658, at *2 (E.D.N.Y. June 24,

DEFENDANT ASA HOUSTON'S REPLY TO GOVERNMENT'S OPPOSITION TO MOTION TO DISMISS COUNT FOUR
*United States v. Houston*, 2:24-CR-00621-MWF-5

7

1    2020) (interpreting § 1958(a) and noting requirement that "'death results' does not change the act of

2    travelling or using the mail into an act involving physical force" because the "criminalized conduct

3    itself is not violent, and its connection to a person's death may be attenuated."); *see also Fernandez v.*

4    *United States*, 569 F. Supp. 3d 169, 178-79 (S.D.N.Y. 2021) (finding conspiracy to commit murder

5    for hire resulting in death under § 1958(a) not a § 924(c) crime of violence)).

6         Relying on out-of-circuit precedent, the government claims "that an offense requiring proof of

7    serious physical injury or resulting in death necessarily involves the use of the violent physical force

8    required by *Johnson*." Gov. Oppo. at 10. It claims the Ninth Circuit has "adopted a similar rule," but

9    that misreads the case it supports for that proposition. *Id.* In *Villagomez*, the Ninth Circuit found that

10   a Nevada battery statute required "*Johnson*-level force." 127 F.4th at 119; *see* Gov. Oppo. at 10

11   (citing *Villagomez*). Key to that holding was the fact that the underlying criminal conduct—battery

12   resulting in substantial bodily harm—required, under state law, the *intentional* deployment of

13   physical force of some kind against another person. *Id.* at 122. In other words, unlike § 2261A(2)(A),

14   the underlying criminal *conduct* in *Villagomez* required the intentional use of violent, physical force;

15   the statute did not criminalize non-violent conduct that resulted in the use of violent, physical force.

16        Also problematic is that statutory language criminalizing conduct resulting in death does not

17   necessarily trigger a "separate mens rea," let alone the requisite intentional mens rea required to

18   satisfy the elements clause of § 924(c). In *McDuffy*, the defendant entered a bank, brandished a

19   handgun, and demanded money. 890 F.3d at 798. A customer tried to grab the gun and was shot by

20   the defendant and died. *Id.* The defendant was charged with bank robbery, in violation of 18 U.S.C. §

21   2113. *Id.* Under § 2113(e), a defendant must receive a life sentence or the death penalty "if death

22   results." The district court rejected the defendant's argument "that the enhancement in § 2113(e)

23   should apply only when a bank robber 'knowingly' kills a person in the course of a bank robbery"

24   and the Ninth Circuit affirmed. *McDuffy*, 890 F.3d at 798. It found "§ 2113(e) does not contain a

25   separate requirement that the defendant intend the killing which results from his bank robbery," and

26   that "the enhancement applies even if a bank robber accidentally kills someone in the course of a

27   bank robbery." *McDuffy*, 890 F.3d at 798. It found the statute "makes no mention of a mens rea and

28   even describes the killing in the passive voice," which suggests a Congressional intention to omit a

DEFENDANT ASA HOUSTON'S REPLY TO GOVERNMENT'S OPPOSITION TO MOTION TO DISMISS COUNT FOUR
*United States v. Houston*, 2:24-CR-00621-MWF-5

8

1   mens rea. *Id.* at 801.

2        The Ninth Circuit also reasoned the Supreme Court has held "it was unnecessary to read a

3   separate mens rea requirement into [a] sentencing enhancement" when the "defendant [was] already

4   guilty of unlawful conduct' by committing the underlying 'basic crime.'" *Id.* at 800 (quoting *Dean v.*

5   *United States*, 556 U.S. 568, 575-76 (2009)). Other Supreme Court cases have explained "'the

6   presumption in favor of a scienter requirement should apply to *each of the statutory elements that*

7   *criminalize otherwise innocent conduct.*'" *McDuffy*, 890 F.3d at 801 (quoting *Elonis v. United States*,

8   575 U.S. 723, 737 (2015)) (emphasis in original). Noting that "the basic crime of bank robbery is

9   already wrongful conduct," there was "no need to add an additional mens rea requirement,"

10  concluding that § 2113(e) "is the functional equivalent of the felony-murder rule but in the form of a

11  sentencing enhancement" that "does not require a mens rea beyond the mens rea necessary to commit

12  the underlying felony." *McDuffy*, 890 F.3d at 802.

13       The analysis in *McDuffy* applies equally here to § 2261A(2)(A)—as it did for § 1958(a) as set

14  forth in Mr. Houston's motion—and thus conclusively demonstrates that § 2261A(2)(A) does not

15  require the *intentional* use of violent, physical force as required for § 924(c). Motion at 7-9. Like §

16  1958(a), as well as § 2113(e), the "death of the victim results" language in § 2261(b)(1) is a

17  sentencing enhancement added onto a "basic crime" that is already wrongful, does not have a

18  separate mens rea, uses passive voice and can include killings that occur accidentally. *See McDuffy*,

19  890 F.3d at 798. So § 2261A(2)(A) does not requires the intentional use of violent, physical force and

20  cannot be a "crime of violence" even if "death of the victim results." *See Borden*, 593 U.S. at 429;

21  *Villagomez*, 127 F.4th at 118.

22       The government never grapples with *McDuffy*, instead relying on other cases holding that

23  "death results" language generally requires "a but-for causal connection." Gov. Oppo. at 10 (citing

24  *Burrage v. United States*, 571 U.S. 204, 214 (2014)). Mr. Houston does not disagree that such a

25  causal connection is required here, but that does not mean § 2261A(2)(A) satisfies the elements

26  clause because such a causal connection is not the same as intentional conduct. As the Supreme Court

27  made clear in *Borden*, the "volitional conduct" required by the force clause requires "conduct [that] is

28  consciously directed" at another person, not merely that someone is the "recipient of force rather than

DEFENDANT ASA HOUSTON'S REPLY TO GOVERNMENT'S OPPOSITION TO MOTION TO DISMISS COUNT FOUR
*United States v. Houston*, 2:24-CR-00621-MWF-5

9

its 'intended target.'" 593 U.S. at 430.

Moreover, to return to the example given above, assume the ex-girlfriend is ultimately killed by a third party. In that situation, while the defendant could be charged with federal stalking resulting in death, the defendant will not have used, threatened to use, or attempted to use physical force. Instead, he would have set into motion a string of events that both led his ex-girlfriend to fear for her safety and ultimately be killed. That conduct is absolutely covered by § 2261A(2)(A). The defendant is responsible for the result of his conduct. But he still has not used, threatened to use, or attempted to use physical force.

## **CONCLUSION**

Because the government has abandoned its reliance on § 1958(a), and because § 2261A(2)(A) is not a "crime of violence," there is no predicate to support the § 924(c) charge in Count Four of the Second Superseding Indictment. Mr. Houston respectfully requests this Court dismiss Count Four.


Dated:     November 10, 2025            Respectfully submitted,

                                        MOEL LAH FAKHOURY LLP

                                        *s/ Shaffy Moeel*
                                        Shaffy Moeel
                                        Attorneys for Asa Houston

DEFENDANT ASA HOUSTON'S REPLY TO GOVERNMENT'S OPPOSITION TO MOTION TO DISMISS COUNT FOUR
*United States v. Houston*, 2:24-CR-00621-MWF-5

10