TODD BLANCHE
Deputy Attorney General
BILAL A. ESSAYLI
First Assistant United States Attorney
ALEXANDER B. SCHWAB
Assistant United States Attorney
Acting Chief, Criminal Division
IAN V. YANNIELLO (Cal. Bar No. 265481)
GREGORY W. STAPLES (Cal. Bar No. 155505)
DANIEL H. WEINER (Cal. Bar No. 329025)
Assistant United States Attorneys
    1400/1500 United States Courthouse
    312 North Spring Street
    Los Angeles, California 90012
    Telephone: (213) 894-3667/3535/0813
    Facsimile: (213) 894-0142
    E-mail:   ian.yanniello@usdoj.gov
              greg.staples@usdoj.gov
              daniel.weiner@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | No. CR 24-621(B)-MWF |
|---|---|
| Plaintiff, | <u>GOVERNMENT'S OPPOSITION TO JOINT MOTION TO DISQUALIFY AND DISMISS INDICTMENT; EXHIBITS A-D</u> |
| v. | |
| DURK BANKS, et al., | |
| Defendants. | |

Plaintiff United States of America, by and through its counsel of record, Assistant United States Attorneys Ian V. Yanniello, Gregory W. Staples, and Daniel H. Weiner, hereby files its Opposition to Defendants' Joint Motion to Disqualify the United States Attorney's Office for the Central District of California and Dismiss the Second Superseding Indictment with Prejudice (Dkt. 290).  The Court has already denied defendants' request to recuse itself and the other judges in the Central District of California.  Accordingly,

this Opposition will address only defendants' remaining claims for relief.

This Opposition is based upon the attached memorandum of points and authorities, the attached Exhibits A-D, the files and records in this case, and such further evidence and argument as the Court may permit.

Dated: December 8, 2025      Respectfully submitted,

TODD BLANCHE
Deputy Attorney General

BILAL A. ESSAYLI
First Assistant United States Attorney

ALEXANDER B. SCHWAB
Assistant United States Attorney
Acting Chief, Criminal Division

    */s/*
IAN V. YANNIELLO
GREGORY W. STAPLES
DANIEL H. WEINER
Assistant United States Attorneys

Attorneys for Plaintiff
UNITED STATES OF AMERICA

**TABLE OF CONTENTS**

DESCRIPTION                                                                  PAGE

TABLE OF AUTHORITIES...................................................iii

MEMORANDUM OF POINTS AND AUTHORITIES.....................................1

I.   INTRODUCTION........................................................1

II.  STATEMENT OF FACTS..................................................1

     A.   Significant and Credible Evidence Established that
          Defendant Banks is Both a Flight Risk and Ongoing
          Danger.........................................................1

     B.   Judge Donahue Ordered Defendant Banks Detained Pending
          His Murder Trial (December 2024)...............................2

     C.   An Anonymous Caller Left Threatening Messages for
          Judge Donahue Months After the Detention Hearing
          (February 2025)................................................2

     D.   The USMS Notified this Court and the USAO About the
          Messages to the Magistrate Judge...............................2

     E.   Defendant Banks Sought to Reopen His Detention
          Proceedings Based on Purported "New Evidence" (April
          2025)..........................................................4

     F.   An Anonymous Caller Threatened an AUSA Shortly After
          the Government Filed an Opposition to Defendant Banks'
          Motion to Dismiss..............................................4

     G.   The Magistrate Judge Again Ordered Defendant Banks
          Detained (May 2025)............................................5

     H.   This Court Reviewed the Detention Issue "De Novo" and
          Ordered Defendant Banks Detained Based on Flight Risk
          and Continued Danger...........................................6

     I.   The Government Filed a Motion to Empanel an Anonymous
          Jury to Protect Jurors and Preserve Trial Integrity............6

     J.   Defendants File Their Motion to Recuse All Judges in
          the District and to Recuse the Entire USAO.....................7

     K.   This Court Has Already Denied Defendants' Request to
          Recuse and Stay Proceedings, Finding There Is "No
          Basis" for Any Judge in this District to Recuse................8

III. ARGUMENT............................................................8

     A.   Recusal of Any Prosecutor in the Central District is
          Wholly Unwarranted.............................................8

**TABLE OF CONTENTS (CONTINUED)**

<u>DESCRIPTION</u>                                                              <u>PAGE</u>

        1.    Legal Standard..........................................8

        2.    Defendants' Motion is Misleading and Meritless......10

   B.    There is No Basis to Dismiss the Indictment, Let Alone Grant Any Relief to Defendants............................14

   C.    An Evidentiary Hearing is Unnecessary and Unwarranted....15

IV.   CONCLUSION................................................15

**TABLE OF AUTHORITIES**

DESCRIPTION                                                                PAGE

CASES:

Resnover v. Pearson,
    754 F. Supp. 1374 (N.D. Ind. 1991) ................................ 10

Young v. U.S. ex rel. Vuitton et Fils S.A.,
    481 U.S. 787 (1987) ........................................ 1, 9, 13

United States v. Black,
    733 F.3d 294 (9th Cir. 2013) ...................................... 14

United States v. Bundy,
    968 F.3d 1019 (9th Cir. 2020) ..................................... 14

Ungited States v. Green,
    962 F.2d 938 (9th Cir. 1992) ...................................... 14

United States v. Heldt,
    668 F.2d 1238 (D.C. Cir. 1981) ..................................... 9

United States v. Holland,
    519 F.3d 909 (9th Cir. 2008) ....................................... 9

United States v. Irwin,
    612 F.2d 1182 (9th Cir. 1980) ..................................... 15

United States v. Kojayan,
    8 F.3d 1315 (9th Cir. 1993) ....................................... 13

United States v. Lorenzo,
    995 F.2d 1448 (9th Cir. 1993) ...................................... 9

United States v. Rogers,
    751 F.2d 1074 (9th Cir. 1985) ..................................... 14

United States v. Sibla,
    624 F.2d 864 (9th Cir. 1980) ...................................... 12

United States v. Williams,
    68 F.4th 564 (9th Cir. 2023) ................................. passim

STATUTES:

18 U.S.C. § 3142(f)(2) ................................................. 4
18 U.S.C. §§ 2261A(2)(A) ............................................... 4

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.   INTRODUCTION**

Defendants' sweeping request to recuse any prosecutor --- much less all prosecutors --- in the Central District of California and dismiss the indictment in this murder case should be flatly rejected. The motion is based on factual misrepresentations, baseless inuendo, and cites no caselaw supporting the demanded relief. Defendants fail to show any misconduct, let alone prejudice, resulting from the government's decision of how and when to disclose the third-party threats at issue. Indeed, this Court has already denied defendants' request to recuse the Court and every other judge in the district, finding that there was simply no basis to recuse any jurist based on the threats. And given the well-established law that recusal of a prosecutor requires a more stringent showing, see Young v. U.S. ex rel. Vuitton et Fils S.A., 481 U.S. 787, 810-11 (1987), there is likewise no basis whatsoever to recuse any Central District prosecutor from this case. Defendants' motion should be denied without an evidentiary hearing.

**II.  STATEMENT OF FACTS**

   **A.   Significant and Credible Evidence Established that Defendant Banks is Both a Flight Risk and Ongoing Danger**

As previously briefed before this Court, the government submitted significant evidence showing defendant Banks' continued danger and flight risk if released on bond pending trial. (See Dkt. 167.) In addition to the allegations in the indictment charging defendant Banks with leading a group of individuals who murdered S.R. with a machinegun and other weapons, the government submitted evidence that defendant Banks allegedly placed additional monetary

1

bounties to solicit murders, and that defendant Banks attempted to flee the country after his co-conspirators were arrested. (See Dkts. 1 [Complaint]; 105 at 1-2, 5-6.)

### B. Judge Donahue Ordered Defendant Banks Detained Pending His Murder Trial (December 2024)

On December 12, 2024, United States Magistrate Judge Donahue ordered that defendant Banks be detained pending trial based on flight risk and continuing danger to the community. (Dkt. 116.) The court reasoned that no conditions of release would reasonably assure the safety of the community, finding that defendant Banks "uses his money, influence and power to endanger individuals whom he perceives as a threat." (Dkt. 116 at 4.) The court also found that defendant Banks was a flight risk based on his attempt to flee the country immediately after learning of his co-conspirators' arrests. (Id.)

### C. An Anonymous Caller Left Threatening Messages for Judge Donahue Months After the Detention Hearing (February 2025)

On February 22, 2025, an anonymous caller left four voicemails on the magistrate judge's chamber's phone line. (Mot. at Ex. 2.) Among other things, the caller stated that defendants Banks and Deandre Wilson were innocent, and that "if they get life . . . I'm gonna burn this motherfucker down . . . burn it to the ground . . . it's not a game." (Mot. at Ex. 3.)

### D. The USMS Notified this Court and the USAO About the Messages to the Magistrate Judge

On February 25, 2025, a United States Deputy Marshal contacted this Court's chambers, notifying the Court of the threats to the magistrate judge. (Ex. A at USAO_37466.) An AUSA assigned to this case was also copied on the email, which was the first time the

United States Attorney's Office ("USAO") learned about the voicemails. (Id.)

After learning of the messages that morning, the USAO forwarded the threats to the FBI --- a communication that did not include any court staff --- to see whether the United States Marshals Service ("USMS") had any information about the caller. And later that afternoon, an AUSA assigned to this case responded to the Deputy Marshal's email (i.e., Ex. A), stating: "Deputy [Marshal], Thank you for bringing this to our attention, too. We have asked our FBI team to reach out to you." (Ex. B at USAO_37469.) Undersigned counsel is aware of no other communication from the USAO or FBI to any member or employee of the judiciary regarding the threats to the magistrate judge.

On March 6, 2025, the Deputy Marshal responded to his initial email notifying chambers about the voice messages and provided an update that investigators identified the anonymous caller, and "checked to see if he had any contact with the defendants in the Banks trial, which turned up negative results." (Ex. A at USAO_37466.) An AUSA assigned to the case was copied on the Deputy Marshal's March 6, 2025 email. (Id.)[1] To date, investigators have not found evidence linking any defendants in this case to the threats received by the magistrate judge.

---

[1] Notably, defendants' claim that the government engaged in purported "ex parte communications" with the Court appears to be based entirely on the email correspondence contained in government's Exhibits A and B. As a result and for transparency, the government has publicly filed redacted versions of the emails. The government has redacted certain sensitive information from the exhibits, including the names of court personnel. No substantive information has been redacted.

**E. Defendant Banks Sought to Reopen His Detention Proceedings Based on Purported "New Evidence" (April 2025)**

On April 18, 2025, defendant Banks filed an application to reconsider the magistrate judge's December 2024 detention order. (Dkt. 134.) That same day, defendant Banks also filed a motion to dismiss the First Superseding Indictment, claiming that certain rap lyrics included in the indictment's introductory allegations about greenlighting a murder were authored before S.R.'s murder, thus alleging that defendant Banks could not have been rapping about greenlighting S.R.'s murder. (Dkt. 135.)

In response to defendant Banks' motion to dismiss, the government obtained a Second Superseding Indictment ("SSI") that removed the disputed introductory allegation on May 1, 2025. (Dkt. 147.) The SSI also added a charge against all defendants of Stalking Resulting in Death, in violation of 18 U.S.C. §§ 2261A(2)(A), (B), 2261(b)(1). (Id. at Count Four.)[2]

**F. An Anonymous Caller Threatened an AUSA Shortly After the Government Filed an Opposition to Defendant Banks' Motion to Dismiss**

On April 28, 2025, the government filed its opposition to defendant Banks' application to reopen his detention hearing. (Dkt. 140.) Among other things, the government noted that the application was meritless because defendant Banks failed to meet his burden to show there was materially new information bearing on his dangerousness and flight. (Id. at 1; 18 U.S.C. § 3142(f)(2).)

---

[2] Written internal USAO communications show that as early as March 2025 the government planned to file a superseding stalking charge. To maintain the government's deliberative privilege, the USAO has not attached these communications, but can provide a redacted version to the Court at its request.

4

Hours after filing the opposition to defendant Banks' application to reopen, an AUSA on the case received a phone call from an unknown male caller who began making threats to the AUSA, which caused the AUSA to begin recording the call. During the call, the caller stated "free Durk, or we gonna shoot that motherfucker up." The AUSA responded "shoot who up," to which the caller said "shit, your ass."[3] (Mot. at Ex. 5.)

The investigation into the threats received by the AUSA was handled by an AUSA who is not part of this prosecution team. Undersigned counsel is aware of *no communications* from the USAO or FBI to any member or employee of the judiciary regarding the threats to the AUSA. To date, investigators have not found evidence linking any defendants in this case to the threat received by the AUSA.

### G. The Magistrate Judge Again Ordered Defendant Banks Detained (May 2025)

Following a May 8, 2025 hearing on defendant Banks' application to reconsider detention, the magistrate judge denied defendant's application and maintained the court's previous order. (Dkt. 163.) The court found that defendant Banks failed to present "changed

---

[3] At the request of the defendants, the government exceeded its discovery obligations and produced to defendants the FBI's investigative file concerning the threat to the AUSA, which included a transcript of the video recording made by the AUSA. The recorded video file, however, was not produced to the defense because (1) it is irrelevant, (2) it is duplicative of the information already provided to defendants, and (3) it depicts sensitive information, namely, a photograph of the AUSA's minor child, that is captured throughout the recording. Although defendants never raised the issue with the government prior to filing their motion, defendants' motion oddly questions whether the recording exists. (Mot. at 5 & n.2.) To the extent the Court determines the video recording is relevant to resolving the motion, the government intends to lodge the file in camera.

5

circumstances [] that would warrant reconsideration of the [December 2024] Order of Detention based on either dangerousness or on risk of flight," (Ex. C at 31:6-8), and reaffirmed its December 2024 reasoning that the allegations against defendant Banks "continue to support the conclusion that Defendant uses his money, influence and power to endanger individuals whom he perceives as a threat," (Dkt. 163 at 4).

### H. This Court Reviewed the Detention Issue "De Novo" and Ordered Defendant Banks Detained Based on Flight Risk and Continued Danger

On May 14, 2025, defendant Banks appealed the May 2025 detention order to this Court. (Dkt. 159.) The Court heard argument on June 2, 2025, and issued a written opinion on June 9, 2025 detaining defendant Banks. (Dkt. 202.) Applying de novo review, the Court detained defendant Banks on danger and risk of flight, finding (just like the magistrate judge) the evidence before the Court showed that defendant Banks "uses his money, influence and power to endanger individuals whom he perceives as a threat." (Id. at 4.)

### I. The Government Filed a Motion to Empanel an Anonymous Jury to Protect Jurors and Preserve Trial Integrity

On October 6, 2025, the government filed a motion seeking the empanelment of an anonymous jury. (Dkt. 235.) Among other things, the motion cited the significant media attention this case has generated, which prompted the anonymous threats to the magistrate judge and AUSA. Because the government determined the anonymous threats were relevant to its motion, it produced to defense counsel

///
///

6

information about the threats prior to filing its motion for an anonymous jury.[4]

### J. Defendants File Their Motion to Recuse All Judges in the District and to Recuse the Entire USAO

On November 13, 2025, defendants filed their motion and requested extreme and extraordinary relief: to vacate all hearing and trial dates; to recuse this Court, recuse all judges and prosecutors in the Central District of California; and to dismiss the indictment with prejudice. (Dkt. 290.) The government immediately filed a statement noting at least two incorrect representations in defendants' filing. (Dkt. 292.) The first was that the "[t]he parties request that the Court refer this matter to an out-of-district judge for hearing as soon as is practicable." (Mot. at ECF 3.). Counsel for defendant Banks has since acknowledged the reference to "parties" was an "inadvertent drafting error." The second error --- which has yet to be addressed or corrected by defense counsel --- is that "[t]he United States Attorney's Office, in carrying out a secret investigation, relayed the threats to all judges in the Central District of California, including this Court." (Mot. at 1.) As explained above and below, this statement --- along with the repeated assertions and insinuations that the prosecution team has engaged in multiple *ex parte* communications with the courts --- is patently false.

---

[4] Defendants appear to claim that the government's reliance on the threats when seeking an anonymous jury purportedly means the threats were particularly "credible." (See, e.g., Mot. at 13-14.) Defendants misunderstand the government's argument. Whether the threats were credible or serious is irrelevant; the significance of the anonymous threats is that they were caused by the robust --- and continuous --- media attention related to this case and to show that similar actions may be taken to intimidate and/or influence jurors.

7

**K.  This Court Has Already Denied Defendants' Request to Recuse and Stay Proceedings, Finding There Is "No Basis" for Any Judge in this District to Recuse**

On November 18, 2025, the Court heard oral argument on defendants' request to: (i) have an out-of-district judge hear their recusal motion; (ii) recuse the Court and all judges in the Central District; and (iii) stay proceedings in this case.  The Court denied all three requests.  The Court held that "there is simply no basis for [its] recusal, [the magistrate judge's] recusal, or to stay anything," reasoning that "it simply is not the case" that the threats in this case --- "where at no time has anyone thought that the defendants here had any role in this" --- "can force a judge off the case."  (Ex. D at 18.)

**III. ARGUMENT**

**A.  Recusal of Any Prosecutor in the Central District is Wholly Unwarranted**

1.  <u>Legal Standard</u>

The separation of powers "requires judicial respect for the independence of the prosecutor," which "generally means that [courts] do not have a license to intrude into the authority, powers and functions of prosecutors."  <u>United States v. Williams</u>, 68 F.4th 564, 571 (9th Cir. 2023) (cleaned up).  Disqualification of government counsel necessarily invades into the role of the executive branch because it implicates the separation of powers.  <u>Id.</u>  Accordingly, recusal of a prosecutor demands "a clear basis in fact and law" demonstrating "a violation of the Constitution, a federal statute, or a procedural rule."  <u>Id.</u> at 571, 573 (cleaned up).  The "risk of offending separation-of-powers principles when disqualifying an entire office of Executive branch attorneys" is even greater and

8

"seldom warranted," --- unsurprisingly, "every circuit court that has reviewed an officewide disqualification has reversed." Id. at 572 (collecting cases). Such relief is an "an extreme remedy" that is "only appropriate in the most extraordinary circumstances." Id. at 573.

Before a court may disqualify even a single prosecutor, a defendant "must demonstrate prejudice from a prosecutor's conflict of interest" or "present clear and convincing evidence of prosecutorial misconduct." Id. (cleaned up); see also United States v. Lorenzo, 995 F.2d 1448, 1453 (9th Cir. 1993). Only after the court makes those attorney-specific factual findings and legal conclusions is disqualification of government counsel appropriate; this cannot be done "merely as a precautionary measure." Williams, 68 F.4th at 573-74.

The mere appearance of a conflict of interest is insufficient to warrant disqualification. Lorenzo, 995 F.2d at 1453; see also United States v. Heldt, 668 F.2d 1238, 1276 n. 80 (D.C. Cir. 1981) (noting that "[t]he potential conflict of interest . . . would have to be very strong before disqualification would be justified . . . [and] would require proof, by clear and convincing evidence, of a prima facie case of misconduct on the part of the AUSA."). Indeed, establishing a prosecutorial conflict of interest requires showing a more severe conflict than establishing the conflict of a judge, as the "standards of neutrality for prosecutors are not necessarily as stringent." Young v. U.S. ex rel. Vuitton et Fils S.A., 481 U.S. 787, 810-11 (1987). And just as a defendant cannot manipulate his choice of judge by threatening the court, United States v. Holland, 519 F.3d 909, 915 (9th Cir. 2008), "a criminal defendant cannot cause

the recusal of his prosecutor by threatening the prosecutor or having him threatened," Resnover v. Pearson, 754 F. Supp. 1374, 1389 (N.D. Ind. 1991).

        2.    Defendants' Motion is Misleading and Meritless

Defendants' motion misrepresents facts, makes repeated references to *ex parte* communications that did not happen, and cites no caselaw supporting their extraordinary request for prosecutorial recusal. The motion to recuse *any* prosecutor, let alone all prosecutors, in the Central District should be denied.

To start, the government corrects multiple false statements and suggestions in the motion. Throughout the filing, defense counsel assert that the prosecution team had "*ex parte* communications" with the courts about the threats. (See, e.g., Mot. at 1, 2, 6, 7, 8, 9, 11, 12, 14, 15, 16, 19). Indeed, the crux of their misconduct claim is that the government's "pattern of nondisclosure and *ex parte* communication over a period of seven months undermines both the appearance and the reality of fairness." (Mot. at 12.) However, as detailed above, this claim is baseless and not grounded in fact. Neither the USAO nor the FBI had any substantive communications with the courts --- let alone *ex parte* --- about the threats to the magistrate judge or the AUSA. As made clear in the discovery attached as government's Exhibits A and B, the *only* communication from the USAO or FBI that involved court staff was the AUSA's cursory, non-substantive e-mail responding to the Deputy Marshal's notification email on February 25, 2025 (i.e., Ex. B). The content of the communication had no bearing on this prosecution, as the Court already found when it determined there was "no basis" for any judicial officer to recuse. And there is no factual basis to

10

1 conclude that any member or employee of the judiciary was aware of
2 the April 2025 threat to the AUSA.  For that reason, defense
3 counsels' explicit, bold claim that "[t]he United States Attorney's
4 Office, in carrying out a secret investigation, relayed the threats
5 to all judges in the Central District of California, including this
6 Court" is bewildering given its complete lack of factual support and
7 provocative suggestion that the USAO alerted nearly 60 district and
8 magistrate judges to the threats.  (Mot. at 1.)

     The merits of defendants' demand for recusal and claim of misconduct fare no better than their motion's factual accuracy. Defendants' claim of prejudice appears to be that government's decision to disclose the threats after defendant Banks' May 8 and June 6 detention hearings prevented them from seeking to recuse the magistrate judge and this Court.  But that claim hinges on the mistaken premise that the voicemails received by the magistrate judge were relevant to either courts' findings that defendant Banks was a flight risk and danger to the community.  They were not.  The threats by anonymous actors have no bearing on the detention analysis: they do not impact that defendant Banks is charged with serious crimes including murder-for-hire resulting in death; they do not change that evidence shows this is not the first murder-for-hire scheme connected to defendant Banks; and they do not unbook the three international flights defendant Banks scheduled immediately after his co-conspirators were arrested.

     Even if the threats were somehow relevant (they are not), defendants cannot show prejudice because they brought their recusal motion and this Court rejected it as meritless.  Specifically, during the November 18 hearing, the Court found "there is simply no basis

11

for [its] recusal, [or the magistrate judge's] recusal," as the threats were made by "someone who just was agitated and acted out . . . but that just has nothing to do with these defendants." (Ex. D at 18.)  Thus, defendants cannot claim they were prejudiced because they could not file a meritless motion to recuse either the magistrate judge or this Court.  This is especially so given this Court's de novo review of defendant Banks' arguments on June 8, and this Court's unambiguous ruling on November 18 that neither it nor the magistrate judge had any basis to recuse.[5]

Moreover, defendants cite no rule, statute, or case showing "a clear basis in fact and law" that the prosecutors in this case committed any misconduct by deciding to disclose the threats on October 1, 2025.  <u>Williams</u>, at 573 (cleaned up).  This is because they cannot, as the government disclosed the threats when they became relevant to this case --- <u>i.e.</u>, when the government relied on the threats in support of its motion for an anonymous jury.[6]  Defendants' suggestion that the government was required to provide the defense with immediate updates about investigations into threats and/or improper attempts to influence individuals connected to this case is

---

[5] And as noted, under Section 455, the court itself is obligated to determine whether it should recuse.  <u>See</u> <u>United States v. Sibla</u>, 624 F.2d 864, 867-68 (9th Cir. 1980) (Section 455 "is directed to the judge, rather than the parties, and is self-enforcing on the part of the judge.").  There is simply no basis to conclude that such evaluation was not conducted by the courts in this case prior to the November 18 hearing.

[6] Contrary to defendants' assertions during the November 18 hearing, the timing of the government's disclosure was not gamesmanship.  In its motion for an anonymous jury, the government highlighted that the public nature of this trial has already led to actions by third parties attempting to influence the proceedings.  Such actions --- whether they were credible threats or not --- pose a palpable risk of infringing on jurors' fear of reprisal and independence in their fact-finding mission.  <u>See</u> <u>supra</u> n. 4.

12

wrong.  As explained above, there is absolutely no basis to conclude that either court failed to evaluate its ethical duties under Section 455 throughout this case.

Finally, defendants' suggestion that the SSI was vindictive or in anyway related to the threat received by the AUSA (Mot. at 6), is baseless and belied by written, internal deliberative process materials.  See supra n. 1.  As previously briefed before the Court, the SSI was sought and returned following a motion challenging when certain of defendant Banks' violent rap lyrics were written.

The weakness of defendants' motion is also apparent from the authority cited in the motion.  Rather than citing any analogous caselaw supporting prosecutorial recusal, defendants tellingly cite to cases that have nothing to do with the facts here.  In Young v. U.S. ex rel. Vuitton et Fils S.A., 481 U.S. 787 (1987), the Supreme Court held that it was error for a trial court to appoint counsel for a party that is the beneficiary of a court order to undertake criminal contempt prosecutions for alleged violations of that order.  In United States v. Kojayan, 8 F.3d 1315 (9th Cir. 1993), the Ninth Circuit held that a prosecutor committed misconduct by withholding material information about a cooperating witness from the defense and mispresenting facts about the witness to the court and jury.  And in Williams, the Ninth Circuit reversed a judge's order recusing an entire United States Attorney's office based on an AUSA's alleged failure to disclose that a defense attorney had simultaneously represented a defendant and a cooperator.  None of these cases support defendants' bold request to recuse any prosecutor in this district based on the government's decision to investigate and disclose third-party threats made by individuals with no apparent

13

connection to defendants. In short, just like their request for judicial recusal, defendants have failed to establish any basis for prosecutorial recusal.

### B. There is No Basis to Dismiss the Indictment, Let Alone Grant Any Relief to Defendants

The "drastic step" of "dismissing an indictment is a disfavored remedy." United States v. Rogers, 751 F.2d 1074, 1076-77 (9th Cir. 1985). "A district court may dismiss an indictment for government misconduct for one of two reasons, each with its own standard: either because it finds a serious due-process violation or because it concludes that dismissal is warranted under its supervisory powers." United States v. Bundy, 968 F.3d 1019, 1030 (9th Cir. 2020). Dismissal for a due process violation requires the government's conduct to "be so grossly shocking and outrageous as to violate the universal sense of justice." Id. (cleaned up). The due process argument "is usually raised in situations where law enforcement conduct involves extreme physical or mental brutality or where the crime is manufactured by the government from whole cloth." United States v. Green, 962 F.2d 938, 942 (9th Cir. 1992) (cleaned up).[7] A district court may dismiss an indictment with prejudice for prosecutorial misconduct under its supervisory powers "only if there is (1) flagrant misbehavior and (2) substantial prejudice," and there is "no lesser remedial action available." Bundy, 968 F.3d at 1031 (cleaned up).

---

[7] "Indeed, there are only two reported decisions in which federal appellate courts have reversed convictions" for claims of outrageous government conduct. United States v. Black, 733 F.3d 294, 302 (9th Cir. 2013) (citing cases from 1971 and 1978).

14

Defendants are entitled to no relief, much less the drastic remedy of dismissal of the SSI with prejudice.  As explained above, the government disclosed the threats when they became relevant to motion practice in this case October 2025.  This Court has already rejected the core of defendants' claim that they suffered any prejudice by continuing to litigate before the magistrate judge and this Court.  Quite simply, this Court need not take any remedial action because there is no wrong to remediate.

### C. An Evidentiary Hearing is Unnecessary and Unwarranted

As made clear by the above-described chronology and the Court's findings at the November 18 hearing, there are no disputes of fact (let alone material facts) that, if resolved in defendant's favor would entitle defendants to relief.  See United States v. Irwin, 612 F.2d 1182, 1187 (9th Cir. 1980).  Accordingly, the Court should deny the request for an evidentiary hearing.

### IV. CONCLUSION

For the foregoing reasons, defendants' motion to recuse any prosecutor in the Central District and dismiss the SSI should be denied.  The USAO should continue to prosecute this brazen murder that occurred in its district, and will continue to do so without fear or favor.

15