CRAIG A. HARBAUGH (Bar No. 194309)
HARBAUGH LAW, PC
360 E. 2nd Street, Suite 800
Los Angeles, California 90012
Tel: (213) 986-8656
Email: craig@harbaugh.law

Attorney for Defendant
DEANDRE WILSON

**UNITED STATES DISTRICT COURT**

**FOR THE CENTRAL DISTRICT OF CALIFORNIA**

UNITED STATES OF AMERICA,

Plaintiff,

v.

DURK BANKS, *et al.*,
*Defendants.*

No. 2:24-cr-621-MWF-2

**DEFENDANT DEANDRE WILSON'S RESPONSE TO GOVERNMENT'S SUPPLEMENT IN OPPOSITION TO DEFENDANT WILSON'S BRADY MOTION (ECF NO. 767); DECLARATION OF CRAIG A. HARBAUGH**

Courtroom: 5A

Defendant Deandre Wilson, by and through his counsel of record, Craig A. Harbaugh, submits this response to the government's Supplement in Opposition to Defendant Wilson's *Brady* Motion, ECF No. 767. The response is based on the attached Memorandum of Points and Authorities, the Second Supplemental Declaration of Craig A. Harbaugh (Second Supp. Decl.), the trial record, the records and files in this case, and any further argument the Court may permit.

Dated: November 10, 2026

Respectfully submitted

/s/ Craig A. Harbaugh
CRAIG A. HARBAUGH
Attorney for Deandre Wilson

## MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

The government's supplement[1] argues that Wilson's *Brady* claim fails because a member of the public emailed defense counsel about Government Exhibit 164 on August 20, 2026, and it suggests that Wilson withdraw his application. Nonsense. Counsel stands by his declaration. He never saw or opened that email, sent by a stranger on the day the jury panel reported for trial, and he was unaware of the Instagram Live comments until the government sent them. The government had them on August 19, held on to them for seven days, and produced them only after the jury had watched the video. It now enlists the FBI to suggest that a stranger's unread email did the prosecutors' job for them. The government cannot outsource its duty to disclose.

It violated *Brady*, and the Court must grant a new trial.

## II. ARGUMENT

The supplement contends that "defense counsel had in his possession the material he claims was exculpatory." Supp. 3:5-6. Not so. The email came from a member of the public, and counsel never saw it. Second Supp. Decl. ¶¶ 5-6. It arrived the day the jury panel reported for trial, amid a heavy volume of email, when counsel's sole focus was the trial and the people trying it with him. Id. ¶ 7. Counsel had no reason to hunt for an email that arrived unsolicited and unannounced. Id. ¶¶ 5, 7.

The supplement implies that counsel misled the Court. Supp. 1 n.1. Wrong. When government counsel stated at the September 4 sidebar that an attorney "or someone she knows sent Mr. Harbaugh an e-mail," 12RT 87:14-15, counsel understood the reference to be to an email from that attorney, searched for one from the address he knew her to use, and found none. Second Supp. Decl. ¶¶ 2-3. The

---

[1] Government's Supplement in Opposition to Defendant Wilson's Brady Motion (Supp.), ECF No. 767.

supplement attributes the August 20 email to a second person, whose name it redacts. Supp. 1:18-20. Only after receiving the government's supplement did counsel locate that message in his inbox, still marked unread. Second Supp. Decl. ¶¶ 5-6.

The supplement faults counsel for declining to search again on the strength of a YouTube comment. Supp. 2:4-11. But whether that email exists is beside the point. The defense did not know of the YouTube copy when it mattered, and it learned of it only when it was too late: after the jury had watched the video. Second Supp. Decl. ¶ 8; Exhibit E.

Suppression turns on what the defense knew, not on what reaches counsel's inbox from an unknown source. The Ninth Circuit's cases "hold only that defense counsel cannot ignore that which is given to him or of which he otherwise is aware, and not that he is obliged to conduct interviews or investigations himself." *Amado v. Gonzalez*, 758 F.3d 1119, 1137 (9th Cir. 2014). The government gave counsel nothing, and counsel was aware of nothing. Excusing the government because a third party sent defense counsel an unsolicited email he never saw would take the prosecutor's duty to disclose and "flip that obligation, and enable a prosecutor to excuse his failure by arguing that defense counsel could have found the information himself." *Id*. at 1136. A crowded inbox does not excuse a *Brady* violation.

The supplement argues that counsel had "equal access" to the YouTube copy and that it was "easily attainable." Supp. 3:12-16. That puts the onus on the wrong party. The government went to trial under a court order to disclose favorable evidence "in a timely manner," *Brady* Disclosure Order at 1, ECF No. 51, and counsel was entitled to presume that it had complied. *Banks v. Dretke*, 540 U.S. 668, 696 (2004) ("Ordinarily, we presume that public officials have properly discharged their official duties." (quoting *Bracy v. Gramley*, 520 U.S. 899, 909 (1997))). The Supreme Court's decisions "lend no support to the notion that defendants must scavenge for hints of undisclosed *Brady* material when the prosecution represents that all such material has been disclosed." *Id.* at 695. Counsel had no duty to scavenge his own inbox for an

email he never knew was there, much less scour the internet for a reposted video he did not know existed.

The supplement's lead case is *United States v. Aichele*, 941 F.2d 761, 764 (9th Cir. 1991). Supp. 3:6-7. The Ninth Circuit has since described *Aichele*'s statement that there is no suppression where a defendant can ascertain the material on his own as dictum that is "overbroad, at the very least." *Benn v. Lambert*, 283 F.3d 1040, 1061 (9th Cir. 2002). And it has refused to accept this kind of burden shifting on facts far stronger for the government than these. "The availability of particular statements through the defendant himself does not negate the government's duty to disclose." *United States v. Howell*, 231 F.3d 615, 625 (9th Cir. 2000). Defendants who "had heard that [a witness] might have information about the shooting" were not charged with what she told the police, because their counsel "certainly did not know the extent of the information." *Tennison v. City & County of San Francisco*, 570 F.3d 1078, 1091 (9th Cir. 2009). And overhearing another man boast about the shooting "is not comparable to" the confession the police held. *Id.* at 1093. If hearing of a witness and overhearing a confession do not relieve the government of its duty, an email counsel never opened certainly doesn't. Regardless, a stranger's account of a comment is not the recording the government withheld.

Nor does the supplement explain the government's own conduct. Nothing in it suggests that the government knew of any email to defense counsel while it held the comments from August 19 to August 26. The government did not withhold the comments because it believed the defense already had them. It withheld them, and then went looking for an excuse only after the defense called it to account.

The government had four chances to do the right thing, and four times it did not. First, on August 19, it saw the YouTube copy showing the comments. 12RT 86:13. It produced nothing. Second, on August 23, defense counsel wrote to the prosecutors about Exhibit 164, raising Rule 106 and "the need for a transcript to assist the jury." Exhibit G. The government answered that Detective Warner Carias "will not display or

discuss the exhibit." *Id.* It said nothing about the comments. Third, on August 24, it moved the video into evidence. 3RT 171:11-14. It said nothing about the comments. Fourth, on the morning of August 26, its own agent met with Kacey Hester and wrote Murdaman and Dede down as separate names. Exhibit C. That afternoon it played the video for the jury. It said nothing about the comments. Only after the jury had watched the video, and the defense had objected, did AUSA Michael Morse tell the Court, "we actually have the comments, but that is not the version." 5RT 315:9-10. The link reached the defense at 10:05 that night. Ex. E. One email at any of those four points would have ended the matter.

Had the government devoted to *Brady* a fraction of the effort it has devoted to justifying its withholding, it would have nothing to justify. It cited a trial spectator's Instagram post, pulled a comment from beneath a YouTube video, asked counsel to produce his own email, and sent two FBI agents to interview a member of the public. 12RT 87:10-15; Supp. 2:12-18; Supp., Exhibits 2-3. When the government wanted to defeat this motion, it went from an FBI interview to a filing in a single day. Supp., Ex. 3. When it was obligated to disclose the comments, it took seven days to forward a link. One email from the prosecutor on August 19 was all *Brady* required. The government instead chose to hold the evidence until the damage was done. That is a textbook Brady violation, and the Court should not countenance it.

## III. CONCLUSION

For the foregoing reasons, Wilson respectfully requests that, if the Court denies his Rule 29 motion, it find that the government violated *Brady* and order a new trial on Counts One through Three.

Respectfully submitted,

Dated: November 10, 2026

*/s/ Craig A. Harbaugh*
CRAIG A. HARBAUGH
Attorney for Deandre Wilson

## SECOND SUPPLEMENTAL DECLARATION OF CRAIG A. HARBAUGH

I, Craig A. Harbaugh, declare:

1. I am an attorney licensed to practice law in the State of California and admitted to practice before this Court. I am counsel of record for defendant Deandre Wilson. I have personal knowledge of the facts stated in this declaration and, if called as a witness, could testify competently to them.

2. At a sidebar on September 4, 2026, government counsel stated that an attorney who had attended the trial had posted that “she or someone she knows sent Mr. Harbaugh an e-mail.” I responded, “That is absolutely false,” and “I never received that.” I understood government counsel to be referring to an email from that attorney, whom I know and whom the government’s supplement calls Reporting Party 1. I had not seen any email from her, or from anyone else, about the comments on Government Exhibit 164.

3. After the issue arose, I searched my email for messages from that attorney’s law firm email address, which was the address I knew her to use. I found no email from that address about Exhibit 164 or the Instagram Live video.

4. On November 4, 2026, government counsel sent me a comment posted on YouTube by a person the supplement calls Reporting Party 2, stating that he had emailed a lawyer on August 20. I responded that I had searched for messages from the person who first claimed to have sent an email, meaning Reporting Party 1, and found nothing, and that I did not intend to run another search based on comments posted on YouTube.

5. On November 10, 2026, the government filed its supplement attaching an email dated August 20, 2026. That day, using the subject line shown in the government’s exhibit, I searched my email account and located the message in my inbox. It was delivered on August 20, 2026, at 10:08 a.m. The sender’s name and email address are not those of the attorney I understood government counsel to be

describing on September 4. The government's supplement identifies the sender as a separate person, Reporting Party 2. I do not recognize the sender's name, and I did not solicit the message. I then searched my email account for any other message to or from that sender and found none. The message has no attachment and contains no link.

6. I did not open or read the August 20 message before November 10, 2026. I did not reply to it or forward it. The message remains marked unread in my inbox. I did not know the message existed until the government filed its supplement.

7. On August 20, 2026, the prospective jurors reported for trial and completed questionnaires, and I was present in court. My inbox received a heavy volume of email that day. From that day forward, my sole focus was the trial. I read and responded to email from the people I was working with on it, including my paralegal, co-counsel, and the prosecutors, as I prepared for each stage. I was not reviewing the rest of my inbox, and I had no reason to expect an email about the case from a member of the public.

8. In my declaration of September 3, 2026, I stated that I did not review the on-screen Instagram Live comments to Exhibit 164 until government counsel provided the YouTube link on August 26, 2026, at 10:05 p.m. That statement is accurate. Before that email, I did not know that a YouTube copy of Exhibit 164 existed.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on November 10, 2026, in Los Angeles, California.

*/s/ Craig A. Harbaugh*
CRAIG A. HARBAUGH